■ RITA SMITH et al., Appellants, v TOWN OF WARWICK, Respondent.—In an action, *inter alia,* to declare plaintiffs to be the owners of certain real property, in which defendant counterclaimed to bar plaintiffs from any claim thereto, plaintiffs appeal from an order and judgment (one paper) of the Supreme Court, Orange County, dated March 29, 1977, which denied their motion for summary judgment and granted defendant's cross motion for summary judgment, declaring defendant to be the owner of the subject premises and barring plaintiffs from all claims thereto. The appeal brings up for review so much of an order of the same court, dated July 18, 1977, as, upon granting plaintiffs' motion for reargument, adhered to the original determination. Appeal from the order and judgment dismissed as academic. The order and judgment was superseded by the order granting reargument. Order dated July 18, 1977 modified, on the law, by adding thereto, after the provision that the original determination is adhered to, the following:

"except that the provisions in the order and judgment granting defendant judgment are deleted and defendant's cross motion for summary judgment is denied." As so modified, said order affirmed insofar as reviewed. Plaintiffs are awarded one bill of $50 costs and disbursements. This action for a declaratory judgment involves conflicting claims of title by deed to a certain doughnut-shaped property (the "doughnut") consisting of 2.16 acres which surrounds a well site (the "hole in the doughnut") in the Bellvale Park subdivision in the Town of Warwick, Orange County. The hole in the doughnut which constitutes the well site is owned by the defendant town, which also claims title to the doughnut by reason of a September 11, 1973 deed from NER Holding Corp., the subdivider. The metes and bounds description in this deed specifically describes the doughnut, as well as its hole. Plaintiffs' claim of title is based upon a prior deed, dated March 6, 1969, from one Solomon Reichman. Reichman was NER Holding Corp.'s grantor and, when the corporation subsequently found itself unable to complete development of anything more than the first section of the subdivision of the property, it conveyed the 100-plus acres of land back to Reichman by deed dated October 3, 1968. The latter deed contained three exceptions: the 25 lots developed pursuant to the filed subdivision map; certain streets shown on said map which had been dedicated to the town by deed; and so much of the premises within the subdivision as were required for the taking of a water supply and distribution system pursuant to an application approved by the State Water Resources Commission. The deed from Reichman to plaintiffs contained the identical exceptions. It is plaintiffs' contention that the land that was excepted from NER's 1968 deed to Reichman was solely the hole in the doughnut and not the doughnut itself. They assert, therefore, that NER's deed conveyed the doughnut to Reichman who then conveyed it to plaintiffs in the March 6, 1969 deed. They thus conclude that NER could not have owned the doughnut when it purported to convey it to the town in 1973. Whether NER's deed to Reichman actually excluded the doughnut is unclear. The deed excluded "so much" of the Bellvale Park, Section 1, Town of Warwick, map as was required for the taking of a water supply and distribution system as approved by the Water Resources Commission of the Department of Environmental Conservation, including all maps and documents filed with that commission. The commission's decision required that NER own all land within 100 feet of any well (thus the hole) and, in addition, that all land within 200 feet of any well (the doughnut) be protected from ground water pollution. It added: "This may best be done by ownership of the land; otherwise, the use thereof must be restricted, preferably by the enactment by the State Department of Health of suitable rules and regulations for that purpose." On the Bellvale Park subdivision map the doughnut was outlined with a broken line containing the following legend: "Restricted to subsurface sanitary disposal". There is nothing on the map or in the record to indicate the existence of any other filed restriction or covenant limiting the use of the doughnut. In any event, five years after NER's deed to Reichman, NER's deed to the town purportedly conveyed all the land included within a circle having a radius of 200 feet from the well. On cross motions for summary judgment, which included no affidavits from NER or any of its officers, Special Term found that the doughnut had been excluded from the land conveyed to Reichman in NER's first deed, denied plaintiffs' motion and granted summary judgment to the town on its cross motion declaring that title was in the town. The cross motion should be denied and the case should proceed to a plenary trial of the issues. Our dissenting brother interprets the 1968 deed from NER to

Reichman as conveying title to the doughnut while excluding from the conveyance the hole where the well was located. In support of this theory the dissent asserts that, with the imposition of a "restriction" upon the use of the doughnut (referring to the legend on the Bellvale Park map), continued ownership of that land by NER was no longer essential for compliance with the Water Resources Commission's decision. The dissent then reasons that since it was not necessary for NER to retain ownership of the doughnut to protect the well site against pollution, NER could not have *intended* to exclude conveyance of title to the doughnut. It concludes, therefore, that the exception in the NER deed to Reichman cannot be construed to exclude title to the doughnut. But, wholly apart from whether the obscurely worded legend on the Bellvale Park map constitutes a meaningful limitation or restriction on the use of the property comprising the doughnut, it is difficult to square an intention by NER not to exclude the doughnut from its deed to Reichman with NER's subsequent conveyance of the doughnut to the town. There are, it seems, more questions than answers with respect to the actual property conveyed in the two deeds at issue. Subdivision 3 of section 240 of the Real Property Law provides that "Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." However, where the language contained in a conveyance is susceptible of more than one interpretation and leaves the intent of the parties uncertain, parol evidence is admissible to show the particular property to which the ambiguous description applies *(Cordua v Guggenheim,* 274 NY 51; *Harris v Oakley,* 130 NY 1). The exception language in NER's deed to Reichman is so ambiguous that determination of title solely on the basis of the motion papers can only be based upon speculation. Although the parties have expressed the desire for a disposition on the papers alone, neither of them has established facts upon which a summary disposition could be based. Since the intent questions cannot be resolved without a full exploration at a trial, denial of summary judgment is mandated. O'Connor, Lazer and Gulotta, JJ., concur.

Suozzi, J. P., concurs in the dismissal of the appeal from the order and judgment, and as to the denial of defendant's cross motion for summary judgment, but otherwise dissents and votes to grant plaintiffs' motion for summary judgment declaring them to be the owners in fee of the disputed parcel, subject to a restriction as to subsurface sanitary disposal, with the following memorandum: On this appeal, we are called upon to resolve the conflicting claims of plaintiffs and the defendant town to title of the outer 100 feet of a doughnut-shaped parcel which has a radius of 200 feet from a well and is located in the Bellvale Park subdivision in the Town of Warwick. It is conceded that the town is the owner of the inner 100 feet from the well. Special Term found in favor of the town and granted its cross motion for summary judgment and denied plaintiffs' motion for summary judgment. In denying defendant's cross motion for summary judgment, the majority is of the view that a resolution of this issue cannot be resolved on opposing papers alone, but only after a full trial. I respectfully disagree with both Special Term and the majority. In my view, summary judgment should have been granted to plaintiffs. Both sides base their respective claims of title on different interpretations of a deed dated October 3, 1968 running from NER Holding Corp. to Solomon Reichman, the plaintiffs' grantor. NER was the subdivider of the subject property, and when it found itself unable to complete anything but the first section of the subdivision, it conveyed the

remaining unused land back to Reichman, its grantor, by the afore-mentioned deed. The deed specifically excluded "so much thereof as is required within the area known as 'Bellvale Park' in the Town of Warwick, in Orange County for the taking of a water supply and distribution system as approved by State of New York Conservation Department, Water Resources Commission, Water Supply Application No. 4992 and the decision of said Commission, including all maps, plans, reports and other papers relating thereto dated and filed in its office * * * which file is entitled, 'In the Matter of the Application of Ner Holding Corp., for approval of its acquisition of a source of water supply and of its financial and engineering plans for the construction of a water supply system.' " It is plaintiffs' contention that the exception in the deed dated October 3, 1968 only excluded the inner 100 feet and, therefore, the outer 100-foot parcel passed from NER to Reichman and then to plaintiffs by a deed from Reichman to plaintiffs dated March 6, 1969. The defendant town, on the other hand, argues that the exclusion in the deed dated October 3, 1968 referred to the whole 200-foot area and that the outer 100 feet did not pass to Reichman (and thereafter to plaintiffs), but rather passed to the town by deed dated September 11, 1973 from NER to the town. The decision of the New York State Department of Conservation, Water Resources Commission, dated October 7, 1965, which is referred to in the deed from NER to Reichman, approved Water Supply Application No. 4992 on certain conditions, which included: "D. Sufficient land must be acquired so that the applicant shall own all land within 100 feet of any such wells * * * F. In addition, all land within 200 feet of any such wells shall be protected and controlled in such a manner that there shall be no danger of pollution of the ground or ground water within that distance. This may best be done by ownership of the land; otherwise, the use thereof must be restricted, preferably by the enactment by the State Department of Health of suitable rules and regulations for that purpose." In holding in favor of the town, i.e., that the outer 100 feet were excluded in the deed from NER to Reichman, Special Term apparently relied upon that part of condition "F" which required that "all land within 200 feet * * * shall be protected and controlled * * * This may best be done by ownership of the land [in NER]". However, the decision of Special Term overlooked the fact that the Water Resources Commission proposed an alternative to NER's ownership of the outer 100 feet as a means of protecting the land. In the very same condition "F", the commission noted that protection could be achieved by restricting the use of the outer 100 feet. Specifically, condition "F" states that "otherwise, the use thereof must be restricted, preferably by the enactment by the State Department of Health of suitable rules and regulations for that purpose." Under this alternative, the restriction would run with the land and NER would be free to convey the outer 100 feet to whomever it wished, subject to the restriction. It was subsequent to this decision that the town planning board approved the final subdivision plans of Bellvale Park, Section I, on October 15, 1965 after it had been certified by the New York State Health Department that the "proposed arrangements for water supply and sewage disposal" had been approved. These final plans show the well surrounded by a solid line circle at a radius of 100 feet and a broken line circle at a radius of 200 feet with the outer doughnut-shaped parcel, which is the subject of this litigation, being "restricted to sub-surface sanitary disposal". Contrary to the position adopted by the majority, this language in the final subdivision plans is not "obscurely worded" and does in fact constitute a meaningful limitation on the use of the property comprising the doughnut. The final plans also show a "playground area"

covering most of the 200-foot radius circle, with a notation that "no offer of dedication of this playground area shall be made to the public". By imposing the restriction upon the outer 100 feet, continued ownership of that area in NER's name was no longer essential for compliance with the Water Resources Commission's approval. In this context, it is just as consistent to interpret the deed of October 3, 1968 which excluded "so much * * * as is required * * * for the taking of a water supply and distribution system as approved by * * * [the] Water Resources Commission" as solely excluding the inner 100 feet from the well. The outer 100 feet could, therefore, be conveyed by NER to a third party, subject to the restriction. Indeed, this interpretation is even more reasonable in my view than the one adopted by Special Term. The playground area covered most of the 200-foot radius circle and it is highly unlikely that NER wished to retain any part of that area unless it was absolutely necessary. The majority states, in support of its holding, that "it is difficult to square an intention by NER not to exclude the doughnut from its deed to Reichman with NER's subsequent conveyance of the doughnut to the town." However, the intention of the parties at the time of the earlier conveyance from NER to Reichman in 1968, which is the crucial issue to be determined, cannot be ascertained by reference to a subsequent deed from NER to the town executed close to five years later. Since the parties have, in the words of the majority, "expressed the desire for a disposition on the papers alone", and the case rests solely upon an interpretation and analysis of the words of a deed, a subdivision map and a Water Resources Commission resolution, a full trial is clearly unnecessary on the issue raised herein. Accordingly, it is my view that the outer 100 feet passed from NER to Reichman and thereafter to plaintiffs and that, accordingly, judgment should be entered in plaintiffs' favor declaring them the owners in fee of the disputed parcel, subject to a restriction as to subsurface sanitary disposal.